HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LOCHIRCO FRUIT AND PRODUCE COMPANY, INC., and THE HAPPY APPLE COMPANY,

    Plaintiffs,

v.

TARUKINO HOLDINGS, INC., TARUKINO, LLC, and VENSPARK, INC.,

    Defendants.

Case No. C18-763-RAJ

ORDER

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction. Dkt. # 9. Defendants oppose the Motion. Dkt. # 17. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons that follow, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction.

### I.    BACKGROUND

Plaintiffs, Lochirco Fruit and Produce Company, Inc. ("Lochirco") and The Happy Apple Company ("Happy Apple Company"), move for a preliminary injunction against Defendants, Tarukino Holdings, Inc. ("Tarukino Holdings"), Tarukino, LLC ("Tarukino"), and Venspark, Inc. ("Venspark"). Lochirco is a Missouri corporation with its principal place of business in Union, Missouri. Dkt. # 1 at ¶ 6. Lochirco distributes

ORDER – 1

caramel apples, apple cider, and fresh apples, throughout the United States. *Id*. at ¶ 7. Lochirco has used the Happy Apple Mark to sell apples and apple products since 1970. *Id*. at ¶ 8. Since 1989, Lochirco has authorized Happy Apple Company to sell, offer for sale, and distribute, apples and apple products on the West Coast using the Happy Apple Mark. *Id*. at 9. Happy Apple Company is a California corporation with its principal place of business in Orosi, California. *Id*. at ¶ 10. Plaintiffs advertise their apple products bearing the Happy Apple Mark, including through the website, *www.happyapples.com* and social media. *Id*. at ¶ 23.

Tarukino Holdings, Tarukino, and Venspark all have their principal places of business in Washington. Dkt. # 1 at ¶¶ 11-13. Plaintiffs allege that Defendants use the Happy Apple Mark as well as similar designations that contain the Happy Apple Mark to advertise, sell, and distribute a marijuana-laced apple beverage to recreational marijuana retailers in the State of Washington. *Id*. at ¶ 28. Defendants' website advertising the beverages include several images and references to fresh apples. *Id*. at ¶ 29. Defendants also rely on social media to promote their products. These posts include images of caramel apples, fresh apples, and apple cider. *Id*. at ¶ 30. Plaintiffs allege that Defendants began using the Happy Apple Mark on or around June 30, 2017. *Id*. at ¶ 31.

On January 8, 2018 and February 16, 2018, Plaintiffs sent letters to Defendants regarding their alleged infringement of the Happy Apple Mark and requesting that they discontinue its use. *Id*. at ¶¶ 32, 33, 35. Plaintiffs allege that counsel for Defendants left a voicemail for Plaintiff's counsel, acknowledging receipt of the letter, on February 26, 2018. *Id*. at ¶ 36. On February 28, 2018, Defendants filed to register the word trademark "Happy Apple" with a product description of "Light Beverages" with the State of Washington. *Id*. at ¶ 37. The Washington Secretary of State issued a trademark registration to Tarukino on March 8, 2018. *Id*. at ¶ 39.

On May 25, 2018, Plaintiffs filed a Complaint against Defendants seeking damages and injunctive relief, alleging that Defendants committed trademark dilution in

ORDER – 2

violation of state and federal law, trademark infringement and cybersquatting in violation of federal law, and unfair or deceptive acts or practices in violation of state law. Dkt. # 1. Plaintiffs then filed this Motion for Preliminary Injunction. Dkt. # 9.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, Digital must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). "A preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). This is only appropriate as long as the plaintiff also shows there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.*

## III. DISCUSSION

### A. Likelihood of Success on the Merits

#### 1. *Trademark Infringement Claim*

To establish a trademark infringement claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), a plaintiff must show: (1) that she has a protected ownership interest in the mark; and (2) that an alleged infringer's use of a competing mark is likely to cause consumer confusion. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014).

It is undisputed that Plaintiffs have not registered the Happy Apple Mark. However, Plaintiffs argue that they own trademark rights in the Happy Apple Mark based on their "long and continuous use and promotion" of that mark. Dkt. # 9 at 7. Plaintiffs contend that the Happy Apple Mark is a descriptive trademark that has taken on a

ORDER – 3

secondary meaning in the "minds of consumers" such that it is associated with Plaintiffs' goods. *Japan Telecom, Inc. v. Japan Telecom Am. Inc*., 287 F.3d 866, 872 (9th Cir. 2002). "In evaluating the sufficiency of evidence of secondary meaning, [courts] look to a number of factors, including (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Id*. at 873.

Plaintiffs argue that the Happy Apple Mark, as used by them, is "well-recognized throughout the nation" and has "acquired distinctiveness" though their long, substantial, and exclusive use of the mark. Dkt. # 1 at ¶ 25. Defendants argue that Plaintiffs cannot support their claims because they do not provide examples of their use of the Happy Apple name or proof that that products bearing the mark are available to customers in Washington. However, Plaintiffs did provide invoices from Happy Apple Company with a mark at the top that contains the words "happy apples" with a picture of what appears to be a cartoon of a caramel apple, and reference their website as evidence of secondary meaning. Dkt. # 10 Ex. H. The marks from the provided invoices are present on the website and pictures of the products show packaging that contain the same marks. Presumably purchasers of Plaintiffs' products could see this mark and associate those products with that mark. Plaintiffs further allege that their products are marketed and sold in retail stores in the State of Washington, i.e. Walmart and Kroger.

While Plaintiffs have arguably established that the Happy Apple Mark has established a secondary meaning, they fail to show that Defendants' use of the Happy Apple name is likely to confuse consumers. The Ninth Circuit has identified eight factors for determining whether consumers would likely be confused by related goods: "[1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care

ORDER – 4

likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011). This list is not intended to be exhaustive and is intended to act as an "adaptable proxy for consumer confusion, not a rote checklist." *Id.*

Despite the use of the name Happy Apple, the marks used by the parties are not, as Plaintiffs contend, identical. While Defendants use apple imagery and references to apples in their product descriptions, their products are very different from Plaintiffs' products. Both parties' products are apple-related but the similarities end there. The Court will note first that the marks used by both parties do not look at all the same. While they both contain the words "happy apple" they look markedly different. The mark used by Plaintiffs uses a different font and includes a cartoon of a caramel apple. The product sold by Defendants includes a picture containing two arrows, an apple, and the words "cannabis infused", similar to a coat of arms.

While both products are sold in the State of Washington, Defendants' products contain cannabis. Under Washington law, cannabis-containing beverages can only be distributed and sold by retail stores licensed and regulated by the Washington State Liquor and Cannabis Board. These retail stores may only sell marijuana, marijuana concentrates, marijuana-infused products, and marijuana paraphernalia. Dkt. # 17 Ex. 1. Defendants' products and Plaintiffs' products are not likely to be sold in close proximity to each other, and it is unlikely that a purchaser would mistakenly enter a retail store selling marijuana or marijuana-related products and confuse a cannabis-containing apple beverage with the fresh apples, apple cider, or caramel apples sold by Plaintiffs. Plaintiffs offer one example as evidence of actual confusion. On two occasions, candidates interviewing for positions at Happy Apple Company searched for information about the company on the internet and finding Defendants' website, assumed that Defendants' products were associated with Happy Apple Company. Dkt. # 10 Ex. K.

ORDER – 5

These candidates were not purchasers of either parties' products and their alleged statements are not sufficient to show actual confusion among a significant number of consumers. Therefore, Plaintiffs fail to show a likelihood of success and fail to raise "serious questions" going to the merits of their trademark infringement claim.

   *2. Trademark Dilution Claim*

Plaintiffs also fail to show a likelihood of success on the merits of their trademark dilution claim. To prevail on a trademark dilution claim under the Trademark Dilution Revision Act ("TDRA") of 2006, 15 U.S.C. § 1125(c), "a plaintiff must show that: (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008). Under the TDRA, "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the marks owner." 15 U.S.C. § 1125(c)(2)(A). To determine the requisite degree of fame, the court may consider all relevant factors including: (i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume and geographic extent of sales or goods; (iii) the extent of the mark's actual recognition; (iv) whether the mark is registered. *Id*.

Plaintiffs fail to support their contention that the Happy Apple Mark as used in their products is famous, merely stating that the mark's fame is evidenced by the presence of their products in "high-traffic retailers across the nation." Dkt. # 9 at 11. Plaintiffs provide no evidence regarding the duration, extent, and geographic reach of advertising and publicity of the mark, the volume and geographic extent of their sales or goods, or the extent of the mark's actual recognition. Plaintiffs also fail to show that Defendants' use of the Happy Apple name in the State of Washington dilutes Plaintiffs' mark. Plaintiffs make a conclusory statement that Defendants' use of the Happy Apple

ORDER – 6

name diminishes the exclusivity of the mark and tarnishes its reputation by associating it with a "federally controlled substance," but do not sufficiently support this statement with any evidence or factual allegations. Plaintiffs fail to show a likelihood of success on the merits of their trademark dilution claim.

   *3. Cybersquatting Claim*

The Anticybersquatting Consumer Protection Act ("ACPA") prohibits "cybersquatters" from registering internet domain names that are identical or confusingly similar to registered service marks and trademarks. *See* 15 U.S.C. § 1125(d)(1). The prohibition contained in § 1125(d)(1) applies when a domain name is identical or confusingly similar to a mark that is distinctive "at the time of registration of the domain name." *Id*. To prevail on their ACPA claim, Plaintiffs must show (1) registration of a domain name, (2) that was "identical or confusingly similar to" a mark that was distinctive at the time of registration, and (3) "bad faith intent" at the time of registration. *See* 15 U.S.C. § 1125(d)(1); *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011).

Defendants have registered and use the domain name: *www.happyapple.com*. Plaintiffs use the domain name: *www.happyapples.com*. There is no question that these names are almost identical and confusingly similar. At issue is whether Plaintiffs have shown that Defendants had bad faith intent at the time of the domain name's registration. Defendants represent that they selected the name "Happy Apple" on or about March 1, 2017, and that the domain name, *www.happyapple.com*, was purchased from GoDaddy.com LLC on or about April 13, 2017. Dkt. # 17 Ex. 1. Defendants represent that they were not aware of Plaintiffs' existence or their products until January 8, 2018, and that this lack of awareness is evidence that there was no bad intent behind the selection of the domain name. *Id*. Plaintiffs argue that Defendants' failure to respond to Plaintiffs' concerns regarding their use of the Happy Apple Mark, and their rush to register the mark after receiving notice of possible infringement is evidence of bad faith. While such evidence is circumstantial, the Court notes that it appears unlikely that

ORDER – 7

Defendants were unaware of Plaintiffs' products. The domain names used by both parties are separated by one letter. It is hard to believe that Defendants would not have stumbled upon Plaintiffs' website when selecting the name of their product when a simple Google search of the name "happy apple" lists Plaintiffs' website in the very first page of results. At the very least, this evidence demonstrates "serious questions" going to the merits of Plaintiffs' cybersquatting claim. As Court need only find likelihood of success on one claim to grant a preliminary injunction, Plaintiffs' remaining claims will not be analyzed at this time. *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 760 (9th Cir. 2014).

### B. Irreparable Harm

The Court will now consider whether Plaintiffs will suffer irreparable harm if injunctive relief is not granted. Plaintiffs' sole argument in support of this factor is that they will suffer loss of their business reputation and damage to their goodwill due to a likelihood of confusion. Plaintiffs argue that Defendants' use of the Happy Apple name associates Plaintiffs' products, which are marketed to children, to marijuana and marijuana-laced products, and that this causes irreparable harm to Plaintiffs' brand and image. As noted above, Plaintiffs fail to show a likelihood of confusion or that Defendants' use of the Happy Apple name is actually causing harm to their business reputation or goodwill. A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). As Plaintiffs make no other convincing argument that they will suffer irreparable harm if a preliminary injunction is not granted, their Motion for Preliminary Injunction is **DENIED.** Dkt. # 9.

//
//
//

ORDER – 8

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction. Dkt. # 9.

DATED this 9th day of January, 2019.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 9